## Kelly & Ballard *v.* Frank Bailey.

**Judgment Without Process.**

> A judgment for the sale of real estate where no process has been served on the holder of the fee and on those in possession, and where no defense is made by such parties, is a nullity and binds no one, and a purchaser at such a sale acquires no right whatever.

### APPEAL FROM MARION CIRCUIT COURT.

February 21, 1884.

Opinion by Judge Lewis:

In 1874 R. C. Harris, in order to secure the payment of a note for $2,417.38, executed to appellee, Bailey, a mortgage upon a livery stable and the lot upon which it was situated, certain personal prop-

erty consisting of animals and vehicles, and a claim he held against one Graves.

January 1, 1876, the livery stable mentioned in the mortgage having been burned, they entered into a written contract by which Harris agreed to build upon the lot a new livery stable as soon as practicable and to pay to appellee on the mortgage debt fifty dollars annually for the next succeeding ten years, the first payment to be made January 1, 1877. In consideration thereof appellee agreed not to enforce his lien on the lot until the end of ten years from the date of the agreement. But it was stipulated that appellee was not thereby prevented from enforcing his lien on the other mortgaged property or subjecting any other property belonging to Harris for the payment of his debt.

March 1, 1876, Harris and appellants, Kelly & Ballard, made a written contract by which the former agreed to lease the lot and the stable then being erected, and also a hotel building, to the latter for the term of five years, beginning on that day, for the consideration of $800 per annum, payable in instalments, for which they gave their several promissory notes. It was also agreed that the appellants should pay for the erection of the livery stable the sum of $500, which when paid by them should be placed as a credit on the rent notes. March 6, 1876, appellee and Harris entered into another written agreement by which Harris agreed to surrender the personal property mortgaged to be sold and the proceeds applied to the mortgage debt, and in case the sum of $600 was not realized from the sale he agreed to make good the deficit, and as collateral security therefor he then delivered to the appellee two of the rent notes for $400 each executed by appellants to Harris.

March 13, 1876, Harris in writing sold these two notes to W. B. England, subject, however, to the payment to appellee of the deficit mentioned. July 3, 1877, England brought this action against appellee, Harris and appellants, and subsequently on his petition the assignee in bankruptcy of Harris was also made a party. In his petition England alleged that he was entitled to the entire amount of said two notes after deducting the difference between what was realized by appellee from the sales of the mortgaged personal property and $600, which he contended was not more than $—— and asked judgment therefor against the appellants.

Appellee filed an answer in which he alleged that the two notes for

$400 each on appellants were transferred to him by Harris to hold as collateral security, in addition to the mortgage, with the understanding that he was to collect and apply the entire amount of these as a credit upon the note he held against Harris. He further alleged that the pretended transfer of the two notes by Harris to the plaintiff, England, was without consideration and made for the purpose of defrauding appellee and other creditors of Harris. Appellee made his answer a cross-petition against appellants and prayed judgment for the amount of the two notes. Spalding, the assignee in bankruptcy of Harris, filed his answer in which he claimed the balance of the two notes left after satisfying the debt of the appellee.

February 9, 1878, judgment was rendered against appellants for the amount of the two notes, the court determining that appellee was entitled to $175 thereof, which was the residue of the $600 after deducting $425, the amount realized by him by a sale of the personal property mentioned in the mortgage, and that plaintiff, England, was entitled to the residue of the two notes. It was at the same time further adjudged by the court that appellee was entitled to have a sale made of the property described in the petition to satisfy his mortgage lien, and accordingly the commissioner of court was directed to sell the stable and lot. August 14, 1878, the commissioner reported to court that he had in pursuance of the judgment sold the stable and lot, appellee, Bailey, becoming the purchaser at the sum of $260, but that he refused to execute bond therefor. The report of sale was then filed, but no further action was had in regard to it until August 9, 1881, when it was confirmed and a deed ordered made to appellee for the property.

January 28, 1882, appellants, Kelly & Ballard, tendered a petition in which they alleged that so much of the judgment rendered February 9, 1878, as directed the sale of the lot and livery stable, and the sale made in pursuance of it were procured by fraud on the part of appellee, and without their knowledge or consent. They further say that the payment by them of $500 towards the erection of the stable was made, and the contract between them and Harris by which they leased the property for five years was entered into, with the knowledge and consent of appellees, and that they have since leasing the property regularly paid to him $50 per annum in fulfilment of the contract of Harris with him, except the last installment, which has not been accepted though tendered by them.

They also state that under proceedings had in the district court of the United States the livery stable and lot had before that time been sold and purchased by them, and a deed duly executed to them for the property. They pray in their petition to be permitted to defend their rights in the action. The court overruled their motion to file the petition, but granted a rule against them to show cause why possession of the livery stable and lot should not be delivered to appellee.

Subsequently at the same term of court appellants filed a response to the rule in which they make substantially the same allegations as are contained in the petition just mentioned. But the court sustained a demurrer to it and made the rule absolute. From that judgment they have appealed.

The only issue raised by the pleadings in this case, as they were before the judgment for the sale of the stable and lot was rendered, was as to the ownership of the two notes for $400, and it was between the plaintiff, England, and appellee, Spalding also setting up some claim to them. Appellants made no defense to either the petition or the cross-petition of appellee against them, not being at all interested in the issue raised but ready to pay the amount of the two notes to whomsoever the court might adjudge them to pay. There was no prayer in either the petition or cross-petition of appellee for the sale of the stable and lot; nor, if it had been asked, would the court have been authorized to adjudge the sale, for by the terms of the contract between Harris and the appellee made in 1876 the property was expressly exempt from sale for ten years, in consideration of the payment by Harris of $50 per year, which appellants had faithfully done in place of Harris with the consent of appellee.

Without deciding whether the record as it stands shows the judgment for the stable and lot to have been procured by fraud, we are of the opinion that the allegations contained in the petition were sufficient to authorize it to be filed; and the court erred in overruling the motion to file it and in granting the rule before the matters set up in the petition were litigated.

But there is a still more serious objection to the judgment for the sale of the stable and lot. There was no process on the cross-petition served on appellants, who then had possession of the stable and lot, nor was the answer of appellee even made a cross-petition

against Harris, the original owner, nor Spalding, the assignee in bankruptcy, in whom the title then was. But without summons against any one, or even a prayer therefor, the judgment was rendered for the sale of the property and it was sold. In our opinion the judgment for the sale and all the proceedings had under it are void, and appellee acquired no right whatever to the property by his purchase at the commissioner's sale.

Whether appellants acquired any title by their purchase at the bankrupt sale we do not decide or inquire, for as the mortgage lien of appellees existed prior to that purchase the property is subject to whatever amount of the mortgage debt may remain unpaid to appellee.

Wherefore, the judgments appealed from are *reversed* and cause remanded for further proceedings consistent with this opinion.

*W. E. & S. A. Russell, for appellants.*

*J. D. Redden, for appellee.*